**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

     *Plaintiff*,

vs.

UNITEDHEALTHCARE, INC.,
INSPERITY HOLDINGS, INC., PLAN, and,
INSPERITY HOLDINGS, INC.,

     *Defendants*.

                               /

**COMPLAINT**

Plaintiff, Surgery Center of Viera, LLC ("SCV"), as assignee, authorized representative, and medical provider of patient / insured L.M., sues Defendants, UnitedHealthcare, Inc. ("UHC," claim administrator), Insperity Holdings, Inc., Plan ("Insperity Plan"), and Insperity Holdings, Inc. ("Insperity," Plan sponsor / Plan administrator), as follows:

**NATURE OF THE ACTION, PARTIES,**
**JURISDICTION, AND VENUE**

1.     This action arises, in part (Count I), under the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for defendants' administrative record production failures relating to the subject L.M.-related health insurance claim, implicating ERISA, 29 U.S.C. § 1024(b), 29 U.S.C. § 1132(c)(1), and 29 C.F.R. § 2575.502c-1 to be precise.[1]  This action also arises, in part (Counts II-V), under Florida state law

---

[1] One of the many problems created by defendants' refusal to timely produce the administrative record (discussed in greater detail below) is SCV's inability to confirm with certainty that the underpayment aspect of this dispute emanates solely from a pricing dispute.  Federal authority makes clear that a "rate of payment" dispute is subject to Florida state law rather than ERISA federal law.  Because defendants' legally, statutorily, and perhaps contractually repugnant

1

for defendants' wrongful, unsubstantiated underpayment of the health insurance benefits owed to SCV for medical services SCV provided to Plan participant / patient / insured, L.M., on October 16, 2015.[2]

2.      At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County.  SCV is *sui juris* in all respects.  SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida.  At all material times, SCV was the authorized representative of L.M. with an assignment of benefits as well, having provided subject medical services to L.M. for which a proper amount of insurance benefits was / is due and owing.

3.      At all material times, UHC was an insurance company incorporated in the State of Minnesota with its principal place of business / headquarters in the State of Minnesota and engaged in the business of selling insurance, administering insurance, and / or deciding and paying insurance claims (*i.e.*, claim administrating).

4.      Upon information and belief, Insperity Holdings, Inc., was incorporated in the State of Texas with its principal place of business / headquarters in the State of Texas and engaged (in pertinent part here) in the administration and / or sponsorship of the Plan.[3]

---

refusal to timely produce the administrative record has stymied SCV's ability to make heads-or-tails of the reasons why defendants tendered a measly approximate 28% claim payment, SCV reserves the right to amend this complaint to expound on Counts II-V relating to the owed insurance benefits once defendants are made to produce the germane documentation / information (often called an administrative record) upon which the claim payment decision was based (Count I).  Given the ongoing harm being created by defendants' administrative record production failures, legal action regrettably could not wait any longer.

[2] Because of the administrative record production failure (Count I) mentioned in footnote 1, *supra*, SCV is somewhat in the dark as to Counts II-V and, again, accordingly reserves the right to amend this complaint to expound on Counts II-V related allegations.

[3] Upon information and belief, the Plan is self-funded.  If the Plan was / is fully-insured (as opposed to self-funded),

5.　　This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(c)(1), and Title 28, United States Code, Section 1331 at least with respect to Count I.  Pursuant to Title 28, United States Code, Section 1367, the Court has pendent jurisdiction over Counts II-V.

6.　　Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely defendants' underpayment of the subject insurance claim both at the initial claim and subsequent pre-suit appeal stages and refusal to supply germane documentation / information required by federal law (and also Florida Statute, for that matter, and also likely the subject insuring agreement), and (b) the Orlando Division of this Court has personal jurisdiction (due to minimum contacts in this forum) over at least UHC.

7.　　All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

**COMMON ALLEGATIONS**

8.　　At all material times, L.M. was covered by the Plan as evidenced by defendants' partial payment of the subject claim.  Upon information and belief, the Member ID number was / is A920687637 and the Account number was / is 0701648.  The claim number assigned was / is 5265886476.

9.　　At all material times, in exchange for valuable premiums paid, the Insperity Plan (Ex. A) was in full force and effect and was a legally valid and binding contract in the State of

---

Insperity would not need to be part of the benefits amount dispute (Counts II-V); *i.e.*, could be dismissed out of this action once the administrative record is produced and the administrative record production penalty is satisfied (Count I).

Florida.

10.     The Insperity Plan (Ex. A.) provides in pertinent part, as follows:

For Non-Network Benefits, Eligible Expenses are based on either of the following: When Covered Health Services are received from a non-Network provider, Eligible Expenses are determined, based on:
- Negotiated rates agreed to by the non-Network provider and either us or one of our vendors, affiliates or subcontractors, at our discretion.
- If rates have not been negotiated, then one of the following amounts:
   o Eligible Expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar service within the geographic market.
   o When a rate is not published by CMS for the service, we use an available gap methodology to determine a rate for the service as follows:
      ▪ For services other than Pharmaceutical Products, we use a gap methodology that uses a relative value scale, which is usually based on the difficulty, time, work, risk and resources of the service. The relative value scale currently used is created by Ingenix, Inc. If the Ingenix, Inc. relative value scale becomes no longer available, a comparable scale will be used. We and Ingenix, Inc. are related companies through common ownership by UnitedHealth Group.

Ex. A, SBN.CHP.I.11.TX.R2 at 26.

11.     The Insperity Plan covered the medical services provided by SCV to L.M. and the Plan was obliged to properly indemnify SCV for such services.

12.     At all material times leading up to the subject medical services received from SCV, L.M. suffered from cervical spondylosis with stenosis and associated radiculopathy and myelopathy.  On October 16, 2015, L.M. underwent corrective surgery at SCV to remedy L.M.'s medical condition.

13.     SCV's billed charges for the subject medical services rendered to L.M. totaled $172,297.00, and a claim package was submitted to UHC relating the same.  Again, claim No. 5265886476 was assigned.

14. By way of a document called the provider explanation of benefits ("EOB") dated November 16, 2015, on UHC letterhead, the subject claim was underpaid; *i.e.*, $49,658.29 was tendered on the $172,297.00 billed charges.

15. As for the purported bases for UHC's underpayment amount, the EOB nakedly sets forth the following in a section entitled "Remarks:"

(HI) we retain the services of Optum to review claims when there is an indication that other insurance coverage may be available. This claim has been reprocessed based on information received from Optum. (NO) this physician or health care provider is out-of-network this service was paid based on amounts set by medicare or other sources if no Medicare amount is available. Medicare amounts are applied to these services even if the patient doesn't have medicare. You are responsible for any amount left after our payment. If you need more information about your benefits, please go to your member website or plan documents. (NE) this physician or health care provider is out-of-network the eligible expense for this service was allowed based on amounts set by Medicare or other sources if no medicare amount is available. If no amount is available the eligible expense is 50% of what the provider billed. You are responsible for any amount left over. (NZ) this physician or health care provider is out-of-network. Payment is based on amounts set by medicare or other sources and if no rate is available at 50% of what your provider billed. Medicare amounts are applied to these services even if the patient doesn't have medicare. You are responsible for any amount left after our payment. If you need more information about your benefits, please go to your member website or plan documents. (S6) your out-of-pocket maximum has been reached. (#) payment of benefits has been made in accordance with the terms of the managed care system.

16. Again, by all appearances, this is not a coverage dispute (*i.e.*, "right of payment claim") because defendants properly conceded coverage *via* the $49,658.29 partial claim payment and did not list any medical judgment related basis (*i.e.*, coverage-related basis) for partial payment amongst the claim decision reasons set forth in the EOB. Rather, this is a damages dispute (*i.e.*, "rate of payment claim") pertaining solely to the underpayment (from the Insperity defendants' coffers if the Plan is a self-funded) that was predicated on UHC's aberrant claim decision-making.

17. SCV reasonably expected to receive payments comporting with the following Insperity Plan language: "When Covered Health Services are received from a non-Network

provider, Eligible Expenses are determined, based on: Negotiated rates agreed to by the non-Network provider and either us or one of [UHC's] vendors, affiliates or subcontractors."

18. In contravention of the Plan language cited above, UHC stated in the EOB that it "retain[ed] the services of Optum to review claims when there is an indication that other insurance coverage may be available. This claim has been reprocessed based on information received from Optum."

19. At all material times, UHC was in agreement with Preferred Medical Claim Solutions ("PMCS"), Three Rivers Provider Network ("TRPN"), and / or MultiPlan (as UHC's affiliates and / or subcontractors) to secure discounted rates from providers (like SCV), which were secured here in relation to SCV.[4]

20. The PMCS allowed amount re-pricing contract (see Ex. B) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

21. The TRPN allowed amount re-pricing contract (see Ex. B) was in full force and effect and was a legally valid and binding contract that established / developed an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum.

22. The MultiPlan allowed amount re-pricing contract (see Ex. B) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed

---

[4] Copies of the pertinent pages of the PMCS, TRPN, and MultiPlan re-pricing contracts procured on UHC's behalf (along with PMCS, TRPN, MultiPlan "client" lists listing UHC) are attached hereto as **Exhibit B**.

re-pricing amount rate of 60% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out- of-pocket maximum, and (b) a 120% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

23.    So, then, SCV did the best it could with its pre-suit appeal / claim re-processing efforts concerning the subject claim underpayment.   "The best it could" because, again, UHC's EOB and correspondence were unsubstantiated as to bases for the amount of claim underpayment.[5]

24.    By letter dated February 19, 2016, SCV asked UHC to abide by the PMCS negotiated rate.

25.    By letter dated February 23, 2016, UHC responded, erroneously stating (in unhelpful, naked fashion) that the claim was accurately processed at the contracted rate.

26.    By letter dated March 7, 2016, SCV sent an appeal, that discussed, among other things, the incorrect rate used and addressed the proper methodology to determine the eligible expenses, as set forth in the Plan.

27.    UHC tendered a denial letter dated April 22, 2016, that stated (in unhelpful, naked fashion) that the request for payment was processed correctly.

28.    Continuing to comply with UHC's appeal procedure, SCV submitted a second appeal on May 24, 2016.

29.    By letter dated May 25, 2016, UHC stated (in unhelpful, naked fashion) that the

---

[5] Given this dispute is, by all appearances, subject to Florida law (because this dispute is, by all appearances, a "rate of payment" dispute), UHC's unexplained claim underpayment decision was also in violation of Section 626.9541(1)(i)3f of the Florida Statutes (at the very least as it pertains to Sections 624.155 and 626.9541). SCV has filed a Civil Remedy Notice ("CRN") contemporaneously with the filing of this complaint and reserves the right to amend this complaint to add bad faith counts if the CRN regrettably goes uncured during the sixty-day safe harbor period. Of course, if bad faith counts are added to this complaint *via* amendment, such counts would have to be abated / stayed (pursuant to Florida law) until resolution of the underlying contractual benefits dispute.

claim was processed accurately and no further payment was due.

30. By letter dated January 11, 2018, Jeffrey Greyber, Esq., then of Merlin Law Group now of Callagy Law, P.C., ("Counsel"), advised UHC that he represented SCV. The letter contained a request for the entire administrative record / claim file pursuant to the law (the United States Code and, to some extent, Florida Statute) and / or the SPD. The pertinent content of this letter sent was as follows:

Regarding our assessment of the carrier's claim(s) denial, underpayment, or delayed non-decision, please promptly provide us with a copy of the entire administrative record. The administrative record should consist, at minimum, of the following: **(1)** Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject medical services and / or at the times of any claims made relating to the subject medical services; **(2)** Copies of all correspondence and / or documents exchanged between the carrier and the insured (or any insured representatives) regarding the subject medical services and / or any claims made relating to the subject medical services; **(3)** Copies of all correspondence and / or documents exchanged between the carrier and SCV regarding the insured, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(4)** Copies of all correspondence and / or documents exchanged between the carrier and any other party (less attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; **(5)** Copies of all of the insured's SCV-related medical records in the carrier's possession; **(6)** Identification of all policy / plan language upon which the claim(s) decision-making was based; **(7)** Contact information for any medical professionals enlisted by the carrier regarding the subject medical services and / or any claims made relating to the subject medical services; **(8)** Transcripts and audio recordings of any recorded statements or phone calls between the carrier and the insured (or any representatives of the insured) regarding the subject medical services and / or any claims made relating to the subject medical services; **(9)** Transcripts and audio recordings of any recorded statements or phone calls between the carrier and SCV regarding the subject medical services and / or any claims made relating to the subject medical services; **(10)** Transcripts and audio recordings of any recorded statements or phone calls between the carrier and any other party (less any attorney-client privileged data, of course) regarding the subject medical services and / or any claims made relating to the subject medical services; **(11)** All EOBs relating to any claims that were made relating to the subject medical services; **(12)** All SCV billing and / or claim(s) submission paperwork received by the carrier relating to the insured; **(13)** All evidence of any payment(s) made by the carrier relating to any claims that were made relating to the subject medical services; **(14)** All guidelines, manuals, written

protocol, medical treatises, medical literature, and / or the like upon which the carrier partially or wholly based its claim(s) decisions; **(15)** All billing paperwork, rate schedules, data or formulas relating to 'usual, customary, reasonable' (UCR) medical provider charges, and / or any other data upon which the carrier has based its decisions as to how much indemnity to afford on the subject claim(s); and **(16)** Copies of any other documents that the carrier partially or wholly relied on in deciding any claim(s) relating to the subject medical services.

Equipped with this legally required documentation / information, we will be in a position to assess and carry out the next step (*e.g.*, pre-suit appeal(s), complaints / grievances with state offices of insurance regulation, litigation, and / or *et cetera*). If the carrier contends that our administrative record production request needs to be directed, in whole or in part, to some other person or entity (*e.g.*, an insured's employer or plan sponsor), we expect the carrier to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence.

Thank you in advance for the anticipated prompt response and cooperation. We look forward to working with the carrier towards rectifying the subject claim(s) denial, underpayment, or delayed non-decision.

31.     By letter dated January 24, 2018, UHC responded (in unhelpful, naked fashion) to the document request and informed SCV that "[UHC] determined that there are no claims on file for the above amount.  Therefore, there are no documents to be sent out at this time."[6]

32.     SCV exhausted the pre-suit appeal process to the best of its ability, hindered by defendants' wrongful refusal to provide required / requested administrative records (and / or like records available per contract or Florida Statute requiring explanation / substantiation to the recipient of an adverse benefits determination, here SCV), in an effort to accomplish defendants' doing the right thing (*i.e.*, fully indemnifying SCV) sans litigation, to no avail.  Hence, this lawsuit as SCV's regrettable last resort.

33.     According to the PMCS and TRPN agreements, for examples, UHC should have

---

[6] Again, UHC failed to acknowledge and act promptly upon communications with respect to the claim.  Further, with the date of L.M.'s medical services being October 16, 2015, the subject claim was discarded well before the six-year record retention requirement established by Title 29, United States Code, Section 1027, or the five-year record retention requirement established by Florida Statute.

used the contracted 80% rate to calculate the allowed amount equaling $131,715.80.[7]  Taking into account the amount previously paid by UHC (which such prior payment presumably already took patient responsibilities subject to out-of-pocket annual maximum into consideration), this leaves an outstanding amount of $82,057.51 in relation to the L.M. claim.[8]  This amount is exclusive of attorneys' fees, costs, interest, and / or extra-contractual exposure.

34.     SCV has suffered significant financial harm no matter how one slices this situation.  The financial harm by way of owed health insurance benefits is in excess of $75,000.00, not including interest of attorneys' fees, costs, or interest, if the negotiated 80% rate prescribed by UHC's third-party re-pricing vendors (*e.g.*, PMCS, TRPN) is honored / enforced as it should be or even if rates comporting with the Insperity Plan (which are not mystery Optum re-pricing formulas not contemplated by the subject Plan language) were to be utilized in the re-pricing assessment.[9]

35.     SCV exhausted the pre-suit appeal process (again, as best it could amidst defendants' administrative failures keeping it in the blind) in  an  effort to  accomplish defendants' doing the right thing (*i.e.*, fully indemnifying SCV) sans litigation, to no avail.  Hence, this lawsuit as SCV's last resort.

**COUNT I – PETITION TO COMPEL PRODUCTION OF THE "ADMINISTRATIVE RECORD" AND FOR RECOVERY OF ADMINISTRATIVE RECORD PRODUCTION FAILURE PENALTY PURSUANT TO ERISA, 29 U.S.C. § 1024(B), 29 U.S.C. § 1132(c)(1) AND 29 C.F.R. § 2575.502c-1**

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as

---

[7] When it comes time to award damages in this case, this amount includes (under a PMCS or TRPN re-pricing exercise) an implant / prosthetic reimbursed at 100% or higher, as implants are a hard cost paid by SCV that is subject to no re-pricing discount.  Such would be true with respect to this amount as it applies to the other claims at issue in this lawsuit involving an implant / prosthetic.  A copy of the implant / prosthetic invoice, reflecting the cost of $19,391.00, is attached as **Exhibit C.**

[8] When it comes time to award damages in this case, the outstanding amount / balance owed may be higher and such would be true with respect to this amount as it applies to the other claims at issue in this lawsuit.  Reasons being, *see, e.g.,* footnote 5, *supra.*

[9] *See* ¶ 10, *supra.*

follows.

36.     This is a claim for production of the administrative record and for award of administrative record production failure penalty pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1.

37.     By multiple letters (referenced in the above common allegations), SCV and its legal counsel asked defendants to provide the administrative record / germane documentation in relation to the L.M. claim, mainly (but not entirely) to learn defendants' reasons for the approximate 28% claim payment lowballing so that SCV could contest same in an educated fashion.

38.     Although UHC was / is absolutely a party responsible for production of the administrative record (either directly or *de facto*), the administrative record request was also put to Insperity.  *See, e.g.*, ¶ 30, *supra* ("If the carrier contends that our administrative record production request needs to be directed, in whole or in part, to some other person or entity (*e.g.*, an insured's employer or plan sponsor), we expect the carrier to promptly forward our administrative record production request to that person or entity and carbon copy us on such correspondence").  All defendants shirked their legally (whether that be United States Code or Florida Statutes) and likely also contractually prescribed administrative record production responsibilities.

39.     Per the above-cited United States Code and Code of Federal Regulations, *see* ¶ 1, *supra*, the $110.00 / day administrative penalty started accruing February 11, 2018.[10]  From February 11, 2018, through the date of this complaint (May 16, 2019), 459 days have passed

---

[10] This represents a conservative penalty starting point, starting on Day-31 after SCV's, *via* Counsel, aforementioned January 11, 2018, letter.  Depending on what the administrative record reveals (once defendants are made to produce same), the administrative penalty may have started sooner than February 11, 2018.

without defendants' satisfaction of the administrative record / germane record requests made in the aforementioned SCV / Callagy Law letters regarding the L.M. claim. So, as of the filing date of this complaint (May 16, 2019), the $110.00 / day administrative penalty totals $50,490.00. Of course, the $110.00 / day penalty will continue to accrue every day following May 16, 2019, up to and including whenever defendants oblige the germane documentation / information requests (*e.g.,* a certified copy of the policy / plan document, payment rate schedules / formulas, *et cetera*, *see* ¶ 30, *supra*) set forth in the earliest request the January 11, 2018 letter noted above.

40. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' wrongful withholding of the administrative record / germane documentation.

41. As a further result of defendants' refusal to produce the administrative record / germane documentation, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover reasonable attorneys' fees and costs pursuant to Title 29, United States Code, Section 1132(g)(1) or Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests (a) Court order compelling defendants to produce the outstanding administrative record posthaste and allowing SCV thirty days following production of the administrative record to amend this complaint, (b) an award to SCV of the administrative record production failure penalty incurred by defendants pursuant to Title 29, United States Code, Section 1132(c)(1), Title 29, United States Code, Section 1024(b), and Title 29, Code of Federal Regulations, Section 2575.502c-1, (c) an award to SCV of attorneys' fees (pursuant to Title 29, United States Code, Section 1132(g)(1))

12

and costs incurred bringing this action, and (d) the Court's affording of any other relief the Court deems equitable, just, and / or proper.

## COUNT II – BREACH OF CONTRACT

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

42.     At all material times to this action and in exchange for a valuable premium, defendants provided health insurance to L.M. under the Plan, which is a binding and enforceable insurance contract under the laws of the State of Florida.

43.     The subject medical services were covered under the Plan, as evidenced by defendants' partial payment of insurance benefits relating to same.  The subject SCV bill should have been paid out pursuant to reasonable, unbiased third-party re-pricing rates (*e.g.*, 80% established by PMCS or TRPN, of all non-implant HCFA line-items and 100%-120% of all implant HCFA line-items because implants are hard costs not subject to a re-pricing discount) and / or publicly available databases assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases).  Defendants erred in deciding to not fully indemnifying SCV by only tendering a $49,658.29 underpayment in relation to the $172,297.00 in billed charges.

44.     By the terms of the Plan (and pursuant to Florida law regardless), defendants had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully indemnify SCV in relation to same.

45.     Defendants failed SCV in these regards (most notably with respect to their failure to pay the benefits due and owing under the Plan), which breached the Plan and / or violated Florida law.

13

46. As a direct, foreseeable, and proximate result of defendants' breaches of their obligations under the Plan, SCV has suffered and continues to suffer damages.

47. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

48. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare, Inc., Insperity Holdings, Inc., Plan, and Insperity Holdings, Inc., for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

### COUNT III – UNJUST ENRICHMENT

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

49. SCV conferred a direct benefit upon defendants by providing defendants' insured / member (L.M.) with medical services to which the insured was entitled under the Plan as evidenced by defendants' partial indemnification relating to same.

50. Defendants voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable charges as prescribed by reasonable, negotiated re-pricing vendors

14

(*e.g.*, PMCS, TRPN) or, for that matter, as prescribed in the Insperity Plan or even the Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography.

51.    Defendants have not paid the value of the benefit conferred by SCV in that defendants have significantly underpaid SCV's claim for the medical services provided to L.M.

52.    Defendants' underpayment results in a windfall for defendants in that (a) defendants collect premiums in return for agreeing to properly indemnify providers, like SCV, that render covered medical services, and / or (b) defendants enjoy an unearned profit (and interest and / or investment returns) on the wrongly withheld insurance benefits.

53.    It is unjust under the circumstances for defendants to underpay SCV's claim.

54.    SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

55.    As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare, Inc, Insperity Holdings, Inc., Plan, and Insperity Holdings, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT*

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as

follows.

56. SCV conferred a direct benefit upon defendants by providing defendants insured / member (L.M.) with medical services to which he was entitled pursuant to the Plan.

57. SCV billed defendants usual, customary, and reasonable charges for the services as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS, TRPN) or, for that matter, as prescribed in the Insperity Plan or Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography. The billed charges represent the fair market value of the services rendered.

58. Defendants received the bill from SCV but underpaid SCV for the services.

59. SCV is entitled to reasonable compensation for the services (*i.e.*, *quantum meruit*), which is by no means accomplished by the unsubstantiated 28% claim underpayment but is reflected in reasonable, unbiased sources such as Florida's publicly available AHCA database or unbiased third-party re-pricing vendor (*e.g.*, PMCS, TRPN) assessments of SCV's rates.

60. The circumstances are such that it would be inequitable for defendants to retain the benefit of the subject medical services without paying SCV the proper value for same.

61. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

62. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare, Inc., Insperity Holdings, Inc., Plan, and Insperity

Holdings, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

### COUNT V – VIOLATION OF SECTION 627.64194 OF THE FLORIDA STATUTES

SCV re-alleges Paragraphs 1 through 35 as if fully set forth herein, and further alleges as follows.

63.    UHC is an insurer governed by Chapter 627 of the Florida Statutes.

64.    SCV provided nonemergency services to L.M.  The services are covered services pursuant to Section 627.64194 of the Florida Statutes.

65.    SCV billed UHC, specifying the nature of the services in its claim submission package and usual, customary, and reasonable charges for such services.  The billed charges represent the fair market value of the services rendered.

66.    UHC rendered a claim decision (which the Insperity defendants endorsed) that grossly underpaid SCV for the services rendered to L.M.

67.    UHC (and the Insperity defendants by extension, as the presumed Plan sponsors) is required,[11] pursuant to Sections 626.64194(4) and 626.64194(5) of the Florida Statutes (both of which *via* Section 626.64194(4) refer to Section 641.513(5) in the following regard), to indemnify SCV for the subject medical services in an amount equal to the lesser of:  (a) SCV's charges, (b) the usual and customary provider charges for similar services in the community where SCV provides services, or (c) the charge mutually agreed to by SCV and UHC within sixty days of SCV's claim submission.

---

[11] "Presumed" because, defendants have wrongly withheld the administrative records.

68. UHC's approximate 28% claim underpayment decision (and the Insperity defendants' approximate 28% claim underpayment, presuming, again, that the Plan is self-funded)[12] comes nowhere close to satisfying Sections 626.64194(4) and 626.64194(5).

69. Defendants have failed to comply with Section 627.64194 of the Florida Statutes by underpaying SCV for the subject medical services.

70. SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of defendants' underpayment of the subject health insurance benefits.

71. As a further result of defendants' refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendants, UnitedHealthcare, Inc., Insperity Holdings, Inc., Plan, and Insperity Holdings, Inc., for liability and for damages including, but not limited to, past-due benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## JURY DEMAND

72. Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated this 16th day of May, 2019.

---

[12] "Presuming" because, again, defendants have wrongly withheld the administrative records.

18

Respectfully Submitted,

**CALLAGY LAW, P.C.**
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorney for Plaintiff*